AO 91 (Rev. 11/11)  Criminal Complaint

AUSA:  Nhan Ho  Telephone: (313) 226-9100
Special Agent:  Sherri Reynolds  Telephone: (313) 202-3400

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.
Acari Reed

Case No.

Case: 2:26-mj-30132
Assigned To : Unassigned
Assign. Date : 3/12/2026
Description: RE: SEALED MATTER (EOB)

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 23, 2026 - March 5, 2026__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Possession of a machinegun |

This criminal complaint is based on these facts:
see attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Sherri Reynolds, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: __March 12, 2026__

_____
Judge's signature

City and state: __Detroit, MI__

Hon. David R. Grand, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# CRIMINAL COMPLAINT AND ARREST WARRANT

I, Sherri Reynolds, Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. This affidavit is in support of criminal complaint and application for an arrest warrant for Acari REED for violations of 18 U.S.C. § 922(o) (possession of machinegun).

2. I am a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since December of 2009. I am currently assigned to the Detroit Field Division. I completed twenty-six weeks of training, which was comprised of the Criminal Investigator Training Program and the ATF Special Agent Basic Training program at the Federal Law Enforcement Training Center in Glynco, Georgia. I received extensive training on firearms identification, common scenarios involving illegal firearms possession and firearms trafficking. Throughout my career, I have investigated or have been involved in hundreds of investigations that involve individuals who are prohibited persons in possession of firearms and/or the illegal use of possession of machine guns.

3. The facts in this affidavit come from my personal observations, training, experience, conversations with ATF Special Agents, and information

provided by other sworn law enforcement officers. This affidavit is intended to show that there is sufficient probable cause and does not set forth all the information known to law enforcement regarding this investigation.

## PROBABLE CAUSE

4. On or about March 5, 2026, law enforcement obtained information indicating that Adult 1, who is a known associate of REED and a suspect in an ongoing non-fatal shooting investigation, was present in XXXXX Riverdale.

5. XXXXX Riverdale is the registered probation address of Rayvon RANDLE. RANDLE is a known associate of REED. Both REED and RANDLE have been validated by law enforcement as members of allied street gangs operating in Detroit, Michigan.

6. On March 5, 2026, law enforcement conducted a probation compliance check on XXXXX Riverdale. Upon arrival, officers encountered Adult 1, as well as RANDLE and HUNTER, another known gang associate who is also on probation. Both RANDLE and HUNTER were observed descending from the upper level of the residence, which consisted of an open space that had been converted into a bedroom. During the initial compliance check, officers discovered ammunition inside a dresser within that space, which also contained personal legal and medical documents belonging to both RANDLE and HUNTER.

7. Inside a vent in the same upper space, officers recovered four firearms, each loaded with a high-capacity magazine. Three of the four firearms were equipped with machinegun conversion devices (MCDs) — aftermarket devices that convert semiautomatic pistols to fire automatically, thereby constituting machineguns as defined under 26 U.S.C. § 5845(b) and subject to regulation under 18 U.S.C. § 922(o).



8. One of the MCD-equipped firearms was a Glock Model 23 pistol with a tan frame and black slide, with mismatched serial numbers on the frame and slide respectively, and fitted with a black and silver metal MCD (hereinafter Firearm 1), as depicted in the photograph below with the MCD identified by a red circle.

3



9. RANDLE and HUNTER have been charged by a federal complaint for illegal possession of machineguns. (Case No. 26-mj-30125).

10. A review of REED's historical cell phone location data, obtained pursuant to a federal search warrant, revealed that between February 1, 2026, and February 27, 2026, REED's device most frequently connected to the two cell towers with primary coverage of the Riverdale Avenue residence during the hours of 3:00 a.m. and 6:00 a.m. This pattern was consistent throughout the specified period, with the sole exception of February 20, 2026 (when REED was outside of Detroit). This indicates that REED was regularly present at the Riverdale Avenue residence during overnight hours. Cell phone location data further reveals that REED's device connected to the towers covering the Riverdale Avenue residence

on the evening of March 4, 2026 — the night immediately preceding the compliance check and recovery of Firearm 1. Notably, following the March 5, 2026 search, REED's device no longer connects to the towers covering the Riverdale Avenue residence. I believe this abrupt cessation is not coincidental — rather, it is consistent with REED's awareness that the firearms had been discovered and his deliberate avoidance of the location thereafter, reflecting a consciousness of guilt and further supporting the inference that REED knowingly possessed the illegal contraband recovered from the residence.

11. Records obtained from Meta Platforms, Inc. pursuant to legal process for REED's Instagram account contain multiple images depicting a firearm with a black slide, tan frame, black trigger, and black and silver MCD, which is visually consistent with Firearm 1 that was recovered during the March 5, 2026, compliance check. Among these records, images sent from REED's Instagram account on January 23, 2026, depict a firearm bearing features consistent with Firearm 1 being handled and displayed by another individual, as well as left unattended, in the same frame as REED, who is himself depicted holding what appears to be a separate firearm equipped with an MCD. The presence of REED and other individuals at the same location with these firearms provides probable cause to believe that all persons depicted, including REED, had access to and exercised dominion and control over the weapons shown.

5

12. A review of archived story content obtained from REED's Instagram account records revealed that on February 4, 2026, REED posted an image depicting himself holding two firearms while standing in proximity to a third firearm, visually consistent with Firearm 1, which is visible on a counter within the frame, as depicted in the photograph below. This image predates the March 5, 2026, compliance check by approximately one month and provides probable cause to believe that REED had access to and exercised dominion and control over Firearm 1 prior to its recovery.



13.     On March 11, 2026 — six days after the March 5, 2026 compliance check and recovery of Firearm 1 — REED uploaded a black and white image to his Instagram story depicting what appears to be a multi-colored firearm consistent with Firearm 1 held in his left hand, as depicted below.



14.     Although the March 11, 2026 post occurred after the recovery of Firearm 1, it is nonetheless indicative of REED's prior possession of and familiarity with the firearm. Based on training and experience, and discussions with other law enforcement personnel, I know that criminal suspects commonly upload photographs taken on prior dates to social media after the fact in an effort to create the appearance of a gap in possession or to otherwise mislead law

7

enforcement. Consistent with this practice, REED applied a black and white filter to the March 11 image, which I believe was done intentionally to obscure the distinctive multi-colored appearance of Firearm 1 and hinder its identification. This manipulation is particularly telling when compared against REED's archived February 4, 2026 Instagram story, which depicts the same location and outfit with Firearm 1 visible in full color — allowing for a direct and consistent visual comparison between the two posts that undermines any suggestion that the March 11 image was taken after the search.

15.    Further, in the March 11 image, REED is observed holding two additional firearms consistent with those depicted in the February 4 post, while deliberately positioning his thumb against the rear of what appears to be Firearm 1 in a manner consistent with an attempt to conceal the MCD affixed to the firearm. Taken together, REED's manipulation of the image through a color filter, his deliberate concealment of the MCD, and the identical setting, outfit, and firearms visible across both posts provide probable cause to believe that REED knowingly possessed Firearm 1 and was aware of the MCD attached to it well prior to its recovery on March 5, 2026.

16.    After reviewing images of the recovered firearms, an ATF Special Agent with specialized training in the identification of MCDs confirmed that the device affixed to the rear of Firearm 1 appeared to be an MCD.

17. The circumstances described above establish probable cause to believe that REED knowingly possessed Firearm 1 from at least January 23, 2026 until the firearm was recovered from the Riverdale Avenue residence on March 5, 2026. Although Firearm 1 was recovered from a concealed compartment (with other firearms) rather than directly on REED's person, REED nonetheless possessed it within the meaning of federal law under two recognized theories. Constructive possession exists when a person does not have direct physical control over an object but knowingly has the power and intent to exercise dominion and control over it. Joint possession exists when two or more individuals share dominion and control over the same object. Both theories are supported here — REED's own social media activity depicts him personally handling what appears to be Firearm 1 on at least one occasion, and Firearm 1 appears on multiple occasions in photographs in which REED is also present, Firearm 1 was recovered from the registered probation address of REED's known associate RANDLE, and cell phone location data independently places REED at that address during overnight hours in the weeks preceding the search.

18. Firearm 1 was equipped with an MCD that was plainly visible on the rear portion of the pistol. Based on training and experience, I know that individuals who possess firearms equipped with MCDs are typically aware of their presence and function, as these devices must be intentionally and physically installed onto a

firearm for it to operate in a fully automatic manner — they do not appear on a firearm by accident. During this investigation, law enforcement also identified communications among individuals known to associate with REED in which MCDs were discussed, including through the use of slang terms commonly used to refer to such devices, and in which images of firearms equipped with what appeared to be MCDs were shared.

19. REED's knowledge of and familiarity with MCDs is further evidenced by his own recorded music. In a song titled "Them or Me," REED makes repeated references to such devices. Specifically, REED states, "I'm a big fish keep this switch," followed approximately eight seconds later by, "It's them or me, so I was clutching in that school zone," and approximately sixteen seconds after that, "...run up on my car and you get switched quick." Based on training and experience, I know that the term "switch" is a commonly used slang term for MCD — typically affixed to a Glock-style handgun — that enables the firearm to operate in a fully automatic manner. REED's repeated references to "switches" in the context of carrying and using firearms reflect familiarity with and access to such devices. This, combined with the communications identified among REED's known associates referencing MCDs and their function, and the recovery of multiple firearms equipped with MCDs from a single concealed location REED is known to frequent, provides probable cause to believe that REED knowingly possessed the

MCDs recovered on March 5, 2026, and was fully aware of their presence and purpose.

20. Taken together, the facts set forth above establish probable cause to believe that REED knowingly possessed Firearm 1 — a machinegun by virtue of the MCD with which it was equipped — on or about between January 23, 2026, and March 5, 2026, in violation of 18 U.S.C. § 922(o).

## CONCLUSION

21. Based on the information included in the paragraphs above probable cause exists that from on or about January 23, 2026 to on or about March 5, 2026, in the Eastern District of Michigan, REED possessed a machinegun in violation of 18 U.S.C. § 922(o).

*Sherri Reynolds*
Sherri Reynolds
ATF Special Agent

Sworn to before me and signed in
my presence and/or by reliable electronic means.

HONORABLE DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

Date: March 12, 2026